E-FILED
Monday, 01 November, 2021  04:20:26 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

JODY L.K.,
      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
      Defendant.

Case No. 4:20-cv-04119-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 15), the Defendant's Motion for Summary Affirmance (Doc. 18), and the Plaintiff's Reply (Doc. 19). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Jody L.K. filed an application for disability insurance benefits (DIB) on November 10, 2017, alleging disability beginning on August 1, 2014. Her DIB application was denied initially on January 26, 2018 and upon reconsideration on June 29, 2018. Jody filed a request for hearing concerning her DIB application which was held on January 10, 2019 before the Honorable Matthew Johnson (ALJ). At the hearing, Jody was represented by an attorney, and Jody and a vocational expert (VE) testified. Following the hearing, Jody's claim was denied on April 8,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 11) on the docket.

2019. Her request for review by the Appeals Council was denied on March 19, 2020, making the ALJ's Decision the final decision of the Commissioner. Jody timely filed the instant civil action seeking review of the ALJ's Decision on May 26, 2020.

## II

At the January 2019 hearing, Jody was 52 years old and lived in a house with a roommate. She earned her college degree in human services specialized K through 12 and previously worked as an after school program coordinator as well as a support service worker at the Lasalle Veteran's Home. Before that, Jody served in the United States Navy for more than 10 years. When asked why she believed she could no longer work, Jody answered:

> I feel that I'm unpredictable as far as my day depends on the amount of sleep that I receive the night before. So in my, in my view, I'm unreliable to where it depends on if I wake up the next morning on time with a migraine or if, if I have a panic attack or a nightmare before with the anxiety associated with waking up and wanting to, so to speak, deal with the outside world.

AR 45-46. She did testify, however, that medication she took helped to minimize her nightmares and to go back to sleep after having them. Upon request for explanation by the ALJ, Jody explained that she was fired from a job in 2014 due to not getting paperwork submitted in time in order to continue work at light duty. She explained further that she was to continue at only light duty "until [she] could recover to be at full duty to go back to work full time." AR 46.

Jody testified her post traumatic stress disorder symptoms included fear, panic, and feeling upset such that she "just [didn't] feel together." AR 51. To the extent she had constant intrusive thoughts, Jody stated she was in "a lot of therapies and so I do mindfulness." AR 51-52. The latter included meditation, yoga, soaking, stretching, and walking her dog. She did those activities at home.

2

She said she spent a lot of her time in isolation. Her panic attacks were triggered by stress, exhaustion, running late, being overloaded, or being hungry. She still left her house four times a week and was more comfortable going out in the daytime because she became confused at nighttime. She testified she was an unreliable friend as she would say she would do something and then end up not going. With regard to memory and concentration, Jody said she had difficulty as she became disoriented, and she noted she forgot simple things – for instance, she would fail to recognize an icon on her phone.

The ALJ identified Jody's activity to include vacationing with her daughter, going to bars, attending a festival at a bar, riding her bike, going out in nature, and ability to drive to mental health appointments in Chicago. He asked how Jody was able to do all of that in light of her reported anxiety attacks and isolation. Jody answered she would do anything for her daughter insofar as traveling with her, and she "guess[ed]" she was able to do other things with coaxing from her friends. AR 63. Jody admitted it was a "[g]ood question" why a friend could not coax Jody at work to go to work every day. *Id*.

Upon questioning by her attorney, Jody elaborated upon her activities that she would end up not going to things "more times than not." *Id*. When she did go out with her friends, she liked that she was able to come and go as she pleased. She said she went out in an effort to be normal, and she wanted to be with people which meant she had to engage.

Lastly, the VE was questioned.

### III

At Step Two of the disability analysis, the ALJ determined Jody had the following severe impairments: post traumatic stress disorder (PTSD); depression; anxiety; and fibromyalgia/myalgia/complex regional pain syndrome (CRPS). AR 18. At Step Three, the ALJ found the severity of Jody's mental impairments,

3

considered singly and in combination, did not meet or medically equal the criteria of Listing 12.15 because they did not satisfy the "paragraph B" criteria of that Listing.[2]  Specifically, the ALJ found Jody had:  mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself.  AR 19-20.  In support of the extent of limitation (or lack thereof) he found in each area, the ALJ cited Jody's statements of issues with memory and understanding, with nightmares from past traumas, exhaustion, intrusive thoughts, unreliability with friends, short temper, unreliability in a work situation, and disorientation.  The ALJ also cited Jody's statements that she was able to pay bills and handle a savings account, to leave her house, to handle her health care, to make simple meals, to do household tasks, to drive a car, to go out alone, and to shop in stores.  The ALJ additionally found that the "paragraph C" criteria were not satisfied for reasons including that Jody was able to perform a full range of activities of daily living and volunteer with the elderly, and there was no evidence of psychiatric hospitalization or evidence that she would decompensate if exposed to increased stress or change.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured [of December 31, 2017], the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to frequently reach overhead to the left, and frequently reach overhead to the right.  For all other reaching, she can reach frequently to the left, and can reach frequently to the right.  She can handle items frequently with the left hand, and can handle items frequently with the right hand.  She has fingering limitations

---

[2] To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15.

frequently with the left hand, and has fingering limitations frequently with the right hand. The claimant can climb ramps and stairs frequently; climb ladders, ropes, or scaffolds occasionally; balance frequently; stoop frequently; kneel frequently; crouch frequently; and crawl frequently. The claimant can work in hazardous environments such as around unprotected heights frequently, near moving mechanical parts frequently, and operate a motor vehicle frequently. She can work in weather frequently, in humidity and wetness frequently, in dust, odors, fumes and pulmonary irritants frequently, in extreme cold frequently, in extreme heat frequently, in vibration frequently, and in loud noise frequently. The individual is able to understand, carry out, remember and perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work) but would complete all end of day goals; involving only simple, work-related decisions with the ability to adapt only to routine work place changes. The individual is occasionally able to interact with supervisors; superficially with coworkers; should perform no tandem tasks with coworkers and should have superficial nontransactional contact with the general public.

AR 20-21.

The ALJ considered evidence that Jody had PTSD as a result of military sexual trauma (she was raped in 1992 and again in 1996), that she treated with licensed clinical social worker (LCSW) Michael Goldstein, and that LCSW Goldstein opined Jody was entitled to "full compensation" due to her trauma. AR 26-27. The ALJ also considered treatment records dated between 2014 and 2019 which detailed Jody's reported activities as well as the results of mental status examinations. The consultative Ph.D. who conducted Jody's psychological assessment in January 2018 observed Jody was pleasant, polite, calm, composed, alert, and oriented to time, place, location, and person. The consultative Ph.D. indicated the following "Diagnostic Considerations": depressive disorder, NOS, chronic; anxiety disorder with panic features; alcohol abuse – in remission; and PTSD features. He stated Jody demonstrated adequate judgment and

responsibility with an ability to understand the effects of her actions on herself and others. AR 25 (citing AR 1740-44). In a January 2019 letter, Jonathan Beyer, Ph.D. stated Jody was diagnosed with PTSD and detailed that she completed appointments with trauma services for PTSD treatment on four dates between November 2018 and January 2019.

The ALJ found "somewhat persuasive" the State Agency psychological consultants' opinions dated January 2018 and June 2018 that Jody retained the ability to perform and sustain activities that required some skills but did not require complex duties. They both found her moderately limited in the ability to maintain attention and concentration for extended periods. The ALJ "agree[d] that the evidence shows non-debilitating mental impairments." AR 26. The ALJ found LCSW Goldstein's opinions "to be not persuasive." AR 27. The ALJ found an opinion provided by Jody's daughter was "persuasive to the extent it [was] supported by the objective medical evidence." *Id.* Given that Jody's daughter was familiar with her mother's activities of daily living, the "limitations cited in [Jody's daughter's] function report are accommodated by the [RFC] limitations [set forth earlier in the Decision]." *Id.* Overall, "Based on the claimant's testimony, evidence submitted at the hearing level, and carefully considering the opinions of Therapist Goldstein," the ALJ found "the claimant is more limited, although not disabled, by her mental impairments." *Id.*

## IV

Jody argues the ALJ committed harmful legal error in failing to build a logical bridge to his conclusion Jody could sustain full-time competitive employment in the following four ways: 1) the ALJ erred by failing to confront the opinion of VA psychologist Kathleen J. Schuster, whose evaluation led to a 70% disability rating due to Jody's PTSD; 2) the ALJ failed to build a logical bridge from the evidence to his conclusion LCSW Goldstein's opinions were not

6

persuasive; 3) the ALJ's credibility assessment is patently wrong; and 4) the ALJ erred by finding Jody's PTSD did not meet or equal Listing 12.15.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th

Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)   currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)   suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)   suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)   is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)   is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Jody claims error on the ALJ's part at Steps Three and Four.

## A

Jody first argues that the ALJ erred because he failed to confront VA psychologist Dr. Schuster's opinion and the mental status exam findings that

informed it.  The Commissioner asserts Dr. Schuster did not provide an opinion for the ALJ to confront, and, ultimately, the ALJ did not need to discuss every piece of evidence.  In December 2014, Dr. Schuster wrote:

> As a mental health provider (psychologist), I can attest to vet's occupational and social impairment with reduction in most areas, including work, school, family relationships, judgement [sic], thinking, and mood, which would affect her ability to function in an occupational environment.

AR 1014-15.  Dr. Schuster noted Jody tended to ramble and needed redirection and to be reminded of the topic of discussion, Jody was in constant motion, and her thought processes were scattered, derailed, and tangential.  AR 1021.  Dr. Schuster further remarked that Jody's "high level of anxiety compromises her ability to sustain attention and concentration."  AR 1026.

A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in abilities including the ability to perform mental demands of work activities, such as understanding, remembering, maintaining concentration, carrying out instructions, or responding appropriately to work pressures in a work setting.  20 C.F.R. § 404.1513(a)(2)(i)-(ii).  Even assuming Dr. Schuster's attestation was not a "medical opinion," her remarks made at that time in the Clinical Findings portion of that record certainly should have prompted the ALJ to explicitly confront Dr. Schuster's notes pursuant to 20 C.F.R. § 404.1520c.  *See* 20 C.F.R. 404.1520c(b) (providing that the ALJ is required to articulate how persuasive he finds all of the medical opinions in a claimant's case record).

Nevertheless, the ALJ's failure to do so was harmless error.  *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is

convinced that the ALJ would reach the same result).  In his Decision, the ALJ explicitly confronted evidence that Jody "could be somewhat tangential," that her anxiety "could surge at times," and that Jody was being treated for anxiety disorder and attention deficit hyperactivity disorder.  AR 24, AR 25, AR 26.  The ALJ also considered Jody's reports of anxiety, attentional problems, her mood, and avoidance of social situations.  As addressed *infra*, the ALJ sufficiently articulated how the balance of the record evidence did not support the extent of Jody's reported mental limitations nor the medical opinions that Jody's past trauma caused extreme limitations in her ability to function in certain areas such that she could not keep a job.  Given that articulation and consideration of findings substantially similar to those Dr. Schuster made, remand is not warranted due to the ALJ's failure to confront Dr. Schuster's opinion.  Though Jody argues it was especially egregious for the ALJ to ignore Dr. Schuster's opinion and evaluation because they led to a 70% VA disability rating due to her PTSD, that VA rating was ultimately meaningless before the ALJ.  *See* 20 C.F.R. § 404.1520b(c)(1) ("Decisions by other governmental agencies . . ." are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled . . . under the Act").

### B

Jody next argues that the ALJ's stated reasons for rejecting LCSW Goldstein's opinions were faulty.  In a May 2016 letter, LCSW Goldstein wrote that Jody was diagnosed with PTSD as a result of military sexual trauma (MST) and was being treated for anxiety disorder and attention deficit hyperactivity disorder as well as PTSD.  AR 336.  LCSW Goldstein "opined that the claimant's trauma had affected every aspect of her life, from her marriage, to her education, to her health and personal life.  He opined that the claimant was entitled to 'full compensation' due to her trauma."  AR 26-27 (citing AR 336).  In June 2016, LCSW Goldstein opined that Jody had:  extreme limitations in the ability to understand

10

and remember detailed instructions; extreme limitations in attention and performing activities within a schedule; and extreme limitations in working with others and completing a normal workday or workweek.  AR 337-338.  In a January 2019 letter, LCSW Goldstein wrote that Jody's mental conditions such as anxiety disorder and PTSD had crippling effects on her life, she had difficulty focusing and maintaining attention, she was impulsive, she had deep seeded issues relating to sexual trauma in early childhood and in the military, and she was "unable to keep a job because of her multiple conditions."  AR 2107.

Contrary to Jody's argument, the ALJ did not err in "categorically" dismissing LCSW Goldstein's statement that Jody was "unable to keep a job" ("unable to work" as the ALJ put it).  The case law Jody quoted in support of this particular argument was applying a regulation inapplicable to this case.  The regulation applicable here, 20 C.F.R. § 404.1520b(c)[3], provides that the Social Security Administration (SSA) will not provide any analysis about how evidence such as statements that a claimant is disabled or is not able to work were considered because those statements "would direct our determination or decision that [a claimant is or is not] disabled . . . within the meaning of the Act, but we are responsible for making the determination or decision about whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(3).

In any event, the ALJ expressly considered the statements LCSW Goldstein made in his May 2016 and January 2019 letters as well as his opinion of "extreme" limitation in Jody's abilities in certain respects.  The ALJ reasoned the extreme limitations to which LCSW Goldstein opined were not supported by the objective medical evidence.  Jody contends LCSW Goldstein's opinions *were* supported by objective evidence of:  mental status exams throughout the record where she had

---

[3] 20 C.F.R. § 404.1520b became effective March 27, 2017.

to be redirected as she became tangential and where she was observed to be anxious; and Jody's hearing testimony when she answered the ALJ's question and then stated, "I'm sorry, what was the question?"  AR 58-59.  As the Commissioner puts it, the minimal evidence Jody cites does not undermine the ALJ's stated reasons that the objective medical evidence, including LCSW Goldstein's own treatment notes, did not support Goldstein's opinions.  Whereas there was evidence that Jody could be "somewhat tangential," the ALJ pointed to evidence that Jody "was able to be redirected to be linear and goal-directed."  AR 24.  Elsewhere in the Decision, the ALJ highlighted Jody was able to handle her health care and act as a reliable historian for her medical issues, was able to navigate travel, and was able to perform household activities.  Whereas there was evidence Jody was observed to be anxious, the ALJ considered evidence of normal mental functioning, mental stability, normal thought processes, and few positive mental findings at the consultative examination.  *See, e.g.*, AR 1406 (euthymic with affect appropriate to the thought content); AR 1066 (alert and oriented x3, stable mood, pleasant and cooperative, no thoughts of suicide); AR 1074 (alert and oriented x3, stable mood, pleasant and cooperative, no thoughts of suicide); AR 1743 (intact memory, cooperative, good effort, adequate degree of abstract reasoning skills appropriate to age and educational background, intact judgment and reasoning skills, average coherence, limited but adequate insight into her own situation).  While Jody cites to several records wherein she was observed to be moving in her seat throughout appointments, the ALJ cited records wherein "no [psychomotor abnormality was] noted."  *See, e.g.*, AR 1235.  In her Reply, Jody argues that the critical inquiry as it relates to LCSW Goldstein's opinions and Jody's limitations in concentration, persistence, and pace is not whether medical providers could redirect her during relatively short treatment sessions, but whether she could concentrate, persist, and maintain pace sufficiently for an entire 8-hour workday,

five days a week.  The fact that she could be redirected was evidence ripe for the ALJ's consideration, and that piece of evidence was just one piece among many the ALJ found pertinent to his conclusion as to Jody's mental limitations.

As for the ALJ's stated reasons that Jody's activities were also inconsistent with LCSW Goldstein's opined-to extreme limitations, the ALJ accurately recited instances in the record of when Jody went out to bars, went on vacation, went to a Navy reunion, and went to a wedding reception.  The Court can trace the ALJ's path of reasoning from such evidence to his conclusion of inconsistency between those activities and LCSW Goldstein's opinion that Jody's mental conditions had a crippling effect on her life.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (noting the Seventh Circuit's repeated admonishment that ALJs must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning").  Jody's argument as to that inconsistency - she says it is unclear how the ALJ found her daily activities inconsistent with LCSW Goldstein's opinions given the latter reached his conclusions with knowledge of those activities – would undermine that portion of Section 404.1520c(a) which states that SSA "will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including from a claimant's medical source.

For the foregoing reasons, the ALJ ultimately built a logical bridge from substantial evidence of record to his conclusion that LCSW Goldstein's opinions were not persuasive.  *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion"); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

## C

Jody also argues that the ALJ impermissibly drew negative inferences from her activities of daily living as part of his subjective symptom assessment. She cites instances in the record where she detailed the way in which she engaged in those activities: she testified she forced herself to engage socially in an attempt to feel normal; she told a doctor she had to leave a friend's wedding three to four different times due to feeling overwhelmed and disconnected and needing to get away from all of the people; and she spent much of her time in California for the Navy reunion alone panicking and preoccupied by her stress and anxiety. Jody also argues that the ALJ failed to confront evidence that directly contradicted his conclusion that she stopped working due to reasons other than her disability. The Commissioner argues that the ALJ reasonably found Jody's subjective reports were not consistent with her medical records, reasonably considered her activities of daily living, and reasonably discounted Jody's reports on the basis of evidence that she was terminated from work for reasons other than ongoing disability.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

The ALJ permissibly considered Jody's activities which included leaving the house several times a week, vacationing, going to bars, shopping in stores, and doing outdoor activities. Though the ALJ did not elaborate upon Jody's reports as

to her experience at the Navy reunion in California or that she forced herself to engage socially, the ALJ did not ignore an entire line of evidence contrary to his findings. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (stating that "an ALJ may not ignore evidence that undercuts [his] conclusion"). The ALJ *did* consider Jody's report of panic attacks, that she avoided social situations, and that she had few friends. As the ALJ put it, Jody "continued to tell her therapist that she was going to bars, despite her PTSD and anxiety." AR 25. Also, the ALJ *did* acknowledge the way in which Jody reported she engaged in one of the highlighted activities. The ALJ detailed Jody's statement that she had to take a break and leave a wedding reception in August 2017 for a while due to not wanting to be around a lot of people. The ALJ continued, "[Jody] went home and let her dog out, and then returned to the reception." *Id*. Contrary to Jody's assertion, the Decision as a whole (and even discrete parts of it as detailed above) reveal that the ALJ did not equate Jody's ability to engage in certain daily activities with an ability to work full-time. Instead, the ALJ obviously reasoned that her activities indicated Jody's symptoms were not as severe and limiting as she alleged. *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("the ALJ did not reason that [the claimant's] activities of daily living are as demanding as those of full-time work. Rather, the ALJ considered [her] activities to determine whether her symptoms were as severe and limiting as she alleged"); *compare Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (noting it to be a problem when ALJs equate the ability to engage in some activities with an ability to work full-time without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation). As he was permitted to do, the ALJ considered Sherry's activities of daily living as part of his evaluation of her symptoms. *See* SSR 16-3p (providing that a claimant's daily activities, among other things, are to be

15

considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms).

The ALJ's omission of certain details pertaining to Jody's performance of some activities does not warrant remand where the ALJ also observed Jody's subjective reports conflicted with the objective medical evidence and considered her reports that treatment and self-help strategies controlled her depression. *See* SSR 16-3p (providing that objective medical evidence, medications, and other measures used to relieve symptoms are to be considering in evaluating the intensity, persistence, and limiting effects of symptoms). Moreover, as with the wedding reception, the evidence in the record includes Jody's report that upon feeling anxiety and stress at the Navy reunion, she was able to rejoin the group after she took a break. AR 1155.

The ALJ's additional finding – that Jody's allegations of disability were undermined by evidence that she was fired from her job in March 2014 "due to something trivial like untimely paperwork" rather than due to her claimed impairments – is a stretch. The record evidence in this regard does not fully support the ALJ's characterization of that evidence, but that is not fatal to the ALJ's subjective symptom evaluation. The ALJ's other stated reasons for finding Jody's subjective statements inconsistent with the record as a whole were supported by the record, and the ALJ's evaluation in that regard was not patently wrong. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (defining "patently wrong" to mean "the decision lacks any explanation or support").

## D

Lastly, Jody argues that the ALJ's erroneous conclusion that LCSW Goldstein's opinion was not persuasive, in turn, caused the ALJ to err in finding Jody's PTSD did not meet or equal Listing 12.15 at Step Three. She says that had the ALJ deferred to Goldstein's opinion on her extreme limitations in

concentration and pace, both the A and B criteria would have been met here, and Jody's PTSD would have equaled listing 12.15. The Commissioner counters that Jody refers to evidence the ALJ generally considered and asks this Court to reweigh it to come to a different conclusion. The applicable version of Listing 12.15 (Trauma- and stressor-related disorders) provided that it was satisfied by specific medical documentation ("paragraph A") and extreme limitation of one, or marked limitation of two of four areas of mental functioning ("paragraph B") *or* specified medical documentation ("paragraph A") and medical documentation that the claimant's mental disorder is "serious and persistent" ("paragraph C"). 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.15.

As an initial matter, the Court notes that both Jody and the Commissioner first argue the merits as to whether the "paragraph A" criteria of Listing 12.15 were met in this case. However, in his Decision, the ALJ only addressed the "paragraph B" and "paragraph C" criteria and determined those criteria were not satisfied, and, significantly, Jody in her brief makes no challenge as to the ALJ's "paragraph C" findings. The Court accordingly begins with the ALJ's "paragraph B" analysis; if the ALJ made no error in finding the "paragraph B" criteria were not met, it is unnecessary to consider the "paragraph A" criteria as a claimant must show that her impairments satisfy *all* the criteria specified in a listing to meet or equal that listing. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999); 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing").

Specifically, at Step Three, the ALJ acknowledged Jody's reports of unpredictability and unreliability, confusion, lack of concentration, disorientation, variable attention span, and failure to finish what she started. The ALJ then cited Jody's normal mental functioning in "[m]any medical records" and her ability to handle her health care, and he then stated Jody's activities demonstrated "no more

17

than moderate limitations with respect to concentrating, persisting, or maintaining pace." AR 20. Reading the ALJ's analysis of LCSW Goldstein's opinions and Jody's subjective symptoms together with the ALJ's analysis of the pertinent record evidence at Step Three, it is clear why the ALJ assigned Jody only "moderate limitation" in the area of concentration, persistence, or pace. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five . . . we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five").

To the extent that Jody rests her Listing 12.15 argument upon LCSW Goldstein's opinions that she had extreme limitation in certain areas, the Court has already determined that the ALJ's consideration of Goldstein's opinions was without error. Also fatal to Jody's argument is that the ALJ sufficiently considered her subjective symptoms against the record as a whole and found that the intensity and limiting effects of those symptoms were not at the level Jody claimed. At this point, the Court would have to do as it cannot to find the ALJ committed error at Step Three – reweigh the evidence (namely, that which Jody cites in her brief). *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner). Because the ALJ did not err in his consideration of the "paragraph B" criteria, the Court does not reach the parties' "paragraph A" arguments.

## V

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 15) be denied; 2) the Defendant's Motion for

Summary Affirmance (Doc. 18) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Jody L.K., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 1, 2021.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE