UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JODY L. K., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-04119-SLD-JEH |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| | ) |
|     Defendant. | ) |

ORDER

Before the Court are Plaintiff Jody L. K.'s motion for summary judgment, ECF No. 15; Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("the Commissioner") motion for summary affirmance, ECF No. 18; Magistrate Judge Jonathan E. Hawley's report and recommendation ("R&R"), ECF No. 20, recommending that the Court deny Jody's motion and grant the Commissioner's motion; and Jody's objection to the R&R, ECF No. 21. For the reasons that follow, the objection is OVERRULED, the R&R is ADOPTED, the Motion for Summary Judgment is DENIED, and the Motion for Summary Affirmance is GRANTED.

BACKGROUND[2]

I.     Procedural Background

On November 10, 2017, Jody filed an application for disability insurance benefits ("DIB"), alleging disability beginning August 1, 2014. Her claim was denied initially and upon reconsideration. Jody then requested a hearing, which took place before an administrative law judge ("ALJ") on January 10, 2019. The ALJ issued a decision denying Jody's claim for

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted for her predecessor. The Clerk is directed to update the docket accordingly.
[2] Judge Hawley's R&R provides a detailed summary of the background of this case and ALJ's decision. *See* R&R 1–6. The administrative record can be found at ECF No. 11. Citations to the record take the form: R. __.

1

benefits on April 8, 2019. The Appeals Council denied her request for review on March 19, 2020; as such, the ALJ's April 8, 2019 decision is the final decision of the Commissioner. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Jody timely filed this suit, seeking judicial review pursuant to 42 U.S.C. § 405(g). Compl. 1, ECF No. 1. Jody filed a motion for summary judgment on March 15, 2021, and the Commissioner filed a motion for summary affirmance on May 27, 2021. The matter was referred to Judge Hawley for a recommended disposition, and he entered an R&R on November 1, 2021. Jody timely filed an objection on November 15, 2021.

## II. ALJ Decision

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), concluding that Jody was not disabled during the relevant period. R. 16. At step one, he found that Jody had not engaged in substantial gainful activity between August 1, 2014, the alleged onset date, and December 31, 2017, her date last insured. R. 17. At step two, he found that Jody had the following severe impairments: post-traumatic stress disorder ("PTSD"), depression, anxiety, and fibromyalgia/myalgia/complex regional pain syndrome. R. 18. At step three, the ALJ found that the severity of Jody's physical impairments, considered singly and in combination, did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19. Next, he found that, as relevant here,

> [Jody] had the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except . . . . [she] is able to understand, carry out, remember and perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work) but would complete all end of day goals; involving only simple, work-related decisions with the ability to adapt only to routine work place changes. [She] is occasionally able to interact with supervisors; superficially with coworkers; should perform no tandem tasks with coworkers and should have superficial nontransactional contact with the general public.

R. 20–21. At step four, the ALJ found that Jody was unable to perform her past relevant work. R. 27. At step five, he found that, considering Jody's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. R. 28. Accordingly, the ALJ found that Jody was not disabled at any time between the alleged onset date and the date last insured. R. 29.

## DISCUSSION

### I. Legal Standards

When a matter dispositive of a party's claim or defense is referred to a magistrate judge, the magistrate judge will "enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1). A party may file written objections to the R&R within fourteen days of its service. *Id.* 72(b)(2). The district judge will then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* 72(b)(3). Any unobjected portions will be reviewed for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In cases in which an ALJ has denied Social Security benefits to the plaintiff, the court "will uphold [the] ALJ's decision as long as the ALJ applied the correct legal standard, and substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). While the ALJ "is not required to provide a complete and written evaluation of every piece of testimony and evidence," he "must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). The court reviewing the ALJ's decision will not "reweigh evidence, resolve conflicts, decide questions of credibility, or

substitute [its] own judgment for that of the Commissioner" but must nevertheless "conduct a critical review of the evidence." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).

II.     **Analysis**

In her motion for summary judgment, Jody argues that the ALJ erred by failing to confront the opinion of Dr. Kathleen Schuster, by improperly discounting the opinion of Licensed Clinical Social Worker ("LCSW") Michael Goldstein, by improperly assessing Jody's credibility, and by failing to conclude Jody's PTSD met Listing 12.15. Pl.'s Mem. Supp. Mot. Summ. J. 10–11, ECF No. 16.[3] Judge Hawley finds that while the ALJ should have explicitly confronted Dr. Schuster's opinion, his failure to do so was harmless error because the ALJ did address findings substantially similar to Dr. Schuster's findings; that the ALJ expressly considered LCSW Goldstein's opinions and built a logical bridge between the evidence and his conclusion that the extreme limitations Goldstein recommended were not supported by the objective medical evidence; that the record supported the ALJ's conclusion that Jody's subjective symptoms were inconsistent with the record as a whole; and that the ALJ's reasoning for finding that Jody's PTSD did not meet Listing 12.15 was sufficient, based on his analysis of Goldstein's opinion, Jody's subjective symptoms, and other record evidence. R&R 8–18.

Jody objects to all four of Judge Hawley's findings. Obj. 1–2.[4] As such, the Court reviews each finding de novo.

---

[3] Jody only argues that the ALJ erred in addressing her mental impairments; she does not address his assessment of her physical impairments. *See* Pl.'s Mem. Supp. Mot. Summ. J. 10–18.

[4] In her objection, Jody explains why she objects to the R&R's finding that the ALJ's omission of Dr. Schuster's opinion was harmless. Obj. 1. Regarding the R&R's other three findings, Jody only "reiterates her arguments" from her motion for summary judgment. *Id.* at 2. Arguably, Jody's objections as to the latter three findings are not specific enough to trigger de novo review. Federal Rule of Civil Procedure 72(b)(2) requires "specific written objections." The Seventh Circuit has interpreted this to mean that a party must only "specify each issue for which review is sought and not the factual or legal basis of the objection." *Johnson*, 170 F.3d at 741. But Local Rule 72.2(B) appears to require more, mandating that a party "specifically identify the portions of the report and

4

### a. Dr. Schuster's Opinion

Jody argues that the ALJ erred in failing to confront Dr. Schuster's medical opinion, ignoring important evidence that supported significant limitations to Jody's capacity to work. Pl.'s Mem. Supp. Mot. Summ. J. 11–12.  The Commissioner counters that "there was no opinion to confront" because "Dr. Schuster's statement does not address what [Jody] could still do despite her impairments or specific impairment-related limitations in the physical, mental, or other demands of work" and thus does not qualify as a medical opinion under Social Security regulations.  Def.'s Mem. Supp. Mot. Summ. Affirmance 13, ECF No. 18-1.

An ALJ must "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).  "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in" her physical, mental, and other abilities related to work.  *Id*. § 404.1513(a)(2).  In her notes on an evaluation that took place on November 7, 2014, Dr. Schuster wrote that she "c[ould] attest to [Jody's] occupational and social impairment with reduction in most areas, including work, school, family relationships, judgement [sic], thinking, and mood, which would affect her ability to function in an occupational environment." R. 1014–15.  She also noted that Jody "tend[ed] to ramble/need[ed] redirection and reminder of topic of discussion," that her "[t]hought processes were scattered, derailed, tangential," and that she had an "inability to sit still." R. 1021.  Further, Dr. Schuster wrote that Jody's "high level of anxiety compromise[d]

---

recommendation to which objection is made and the basis for the objection"—which Jody has not done for three of the R&R's findings.  In light of the limited specificity required by the Seventh Circuit, however, and because Jody refers to all four issues in her objection, *see* Obj. 2, the Court will review all four findings de novo.  In the future, Jody's counsel is admonished to follow the Local Rules and identify the basis for each objection.

her ability to sustain attention and concentration." R. 1026. Jody also "lack[ed] trust in others" and "fe[lt] irritable when not in control." R. 1026.

The ALJ does not discuss Dr. Schuster's opinion in his decision.[5] The Court agrees with Judge Hawley that regardless of whether Dr. Schuster's notes technically qualify as a medical opinion, the ALJ's failure to address them was error. *See* R&R 9. An ALJ errs when he fails to discuss, even minimally, evidence that is favorable to the claimant. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (noting that an ALJ has a "duty to acknowledge potentially dispositive evidence"); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."). Dr. Schuster's commentary on Jody's tendency to ramble, need for redirection, and issues with concentration, *see* R. 1021, 1026, supports Jody's argument that she had extreme limitations in her ability to concentrate, *see* Pl.'s Mem. Supp. Mot. Summ. J. 14, 16, and her statements as to Jody's general impairments affecting her relationships, judgment, and mood, *see* R. 1014–15, 1017, reinforce similar assertions from Jody, *see, e.g.*, R. 57 (testifying at the hearing that as a result of her mental disabilities she "feel[s] [she is] not reliable" and has "isolated [her]self" from her friends). Because the ALJ did not address this piece of evidence that was favorable to Jody, he erred.

However, the Court also agrees with Judge Hawley that this error was harmless and thus does not require remand. *See* R&R 9; *see McKinzey*, 641 F.3d at 892 ("[A]dministrative error may be harmless[.]"). "The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand." *Musgrove v.*

---

[5] The ALJ references statements Jody made during Dr. Schuster's evaluation in his decision, *see* R. 24, but he does not mention Dr. Schuster's notations or her conclusions.

*Berryhill*, No. 17 CV 50117, 2018 WL 1184734, at *5 (N.D. Ill. Mar. 7, 2018). Here, although the ALJ did not directly discuss Dr. Schuster's comments, he discussed similar findings from other evidence in sufficient detail for the Court to be able to predict with great confidence how the ALJ would address this evidence on remand.

The ALJ's decision acknowledged that Jody had received treatment for PTSD, depression, and anxiety and evaluated the opinions of a variety of medical professionals as to the level of impairment Jody's mental disabilities caused her. *See* R. 24–27. It is hard to imagine what additional information Dr. Schuster's vague conclusion that Jody had "[o]ccupational and social impairment" could provide the ALJ. *See* R. 1015. As for Dr. Schuster's observations as to Jody's tendency to ramble, her difficulties with sustaining concentration, and her scattered thought processes, *see* R. 1021, 1026, the ALJ addressed Jody's limitations with regard to "concentrating, persisting, or maintaining pace" in detail, R. 19–20. He found that the evidence indicated that Jody "[wa]s able to handle her health care and act as a reliable historian for her medical issues," as well as "navigate travel, drive a motorcycle, vacation and perform household activities," showing that she could concentrate well enough to complete these tasks. *See* R. 20.[6] The ALJ found "somewhat persuasive" the opinion evidence of psychological consultants reporting "few positive mental findings" and noting that Jody "[wa]s able to be quite active despite her alleged PTSD, anxiety, and depression." R. 26. He acknowledged evidence that Jody "could be somewhat tangential" but pointed to other evidence that she "was able to be redirected to be linear and goal-directed." R. 24. Regarding Jody's "inability to sit still," R. 1021, the ALJ addressed a June 2016 mental health appointment recording no psychomotor abnormalities, R. 1235; *see* R. 24 (addressing the June 2016 notes). Furthermore, as discussed

---

[6] The ALJ came to this conclusion at step three, R. 19–20, but he noted that his RFC finding, which the Court addresses here, "reflects the degree of limitation" he found at step three, R. 20.

below, *see infra* Section II(b), the ALJ found the opinions of LCSW Goldstein, which indicated "extreme limitations in attention and performing activities within a schedule," to be "not persuasive." R. 26–27.

The ALJ concluded that the evidence "demonstrate[d] no more than moderate limitations" to her ability to concentrate and stay on task, R. 20, and, accordingly, found in his RFC that while Jody could not perform tasks "at a production rate pace (e.g. assembly line work)," she could nonetheless "understand, carry out, remember and perform simple, routine and repetitive tasks" and "would complete all end of day goals," R. 25.

The ALJ also discussed Jody's social impairments, addressing her statements that she "avoided social situations" and "had a few friends" but also noting that she went out to bars and to a festival, vacationed out of state more than once, and attended a wedding reception (while she "had to take a break and leave for a while due to not wanting to be around a lot of people," she returned later). R. 24–25. Accordingly, the ALJ found only a moderate limitation in interacting with others. R. 19. The RFC accounted for Jody's social limitations by providing that she could "occasionally . . . interact with supervisors; superficially with coworkers; should perform no tandem tasks with coworkers and should have superficial nontransactional contact with the general public." R. 25.

Based on his in-depth evaluation of similar evidence, and particularly his treatment of LCSW Goldstein's opinion, the Court can predict how the ALJ would consider Dr. Schuster's comments on remand. *See McKinzey*, 641 F.3d at 892 (finding the ALJ's failure to articulate why she rejection a portion of an opinion harmless because "the proper place of that opinion in

the context of the other evidence is clear").[7]  As such, the Court finds the ALJ's failure to address Dr. Schuster's notes is harmless error.[8]

### b. LCSW Goldstein's Opinion

Jody also argues that the ALJ "erred by failing to build an accurate and logical bridge from the evidence to his conclusion LCSW Goldstein's opinions were not persuasive." Pl.'s Mem. Supp. Mot. Summ. J. 12.  She asserts that the ALJ should not have "categorically dismiss[ed] [Goldstein's] opinions" as to her inability to work on the grounds that that decision is reserved to the Commissioner and, further, that Goldstein's opinions "are supported by 'objective evidence' in as much as mental health limitations can ever be supported by objective evidence." *Id*. at 13.  The Commissioner believes that Jody's "argument amounts to, at most, disagreement with how the ALJ interpreted the evidence," which is not a basis for remand.  Def.'s Mem. Supp. Mot. Summ. Affirmance 11.

An ALJ must "articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).  Factors the ALJ will consider in evaluating a medical opinion include supportability, consistency, relationship with the claimant, and specialization, with the first two being the most important. *Id*. § 404.1520c(c); *see id*. § 404.1520c(b)(2).  "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more

---

[7] Jody argues in her objection that the ALJ's error is not harmless because the factual circumstances here are distinguishable from those in *McKinzey*. Obj. 1.  But for an error to be harmless, there need not be a "smoking gun" as in *McKinzey*, *see* 641 F.3d at 891; the court must simply believe the ALJ will come to the same conclusion on remand. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).
[8] Jody further points out that "Dr. Schuster's exam led the VA to find Jody 70% disabled due to her PTSD and 90% disabled due to her combination of impairments" and takes issue with the fact that "[t]he ALJ ignored opinion evidence and exam findings so significant they justified" these findings.  Pl.'s Mem. Supp. Mot. Summ. J. 12.  But "[d]ecisions by other governmental agencies" are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled," 20 C.F.R. § 404.1520b(c)(1), so these results would have no impact on the ALJ's decision, and, as explained above, the decision accounts for the underlying findings in Dr. Schuster's opinion.

persuasive the medical opinion[] will be," and "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . , the more persuasive the medical opinion[] . . . will be." *Id.* § 404.1520c(1)–(2). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[] . . . , including those from [a claimant's] medical sources." *Id.* § 404.1520c(a). A statement from any source opining on whether a claimant is disabled or unable to work is considered "neither valuable nor persuasive" to an ALJ, as the ultimate question of whether a claimant is disabled is reserved to the Commissioner. *Id.* § 404.1520b(c)(3).

The ALJ noted that in May 2016, Goldstein "opined that [Jody's] trauma had affected every aspect of her life, from her marriage, to her education, to her health and personal life" and that as a result, Jody "was entitled to 'full compensation' due to her trauma." R. 26–27 (citing R. 336). Goldstein stated in June 2016 that that Jody "had marked limitations in the ability to remember locations and work-like procedures; extreme limitations in the ability to understand and remember detailed instructions; . . . moderate limitations in the ability to understand and remember simple instructions"; "extreme limitations in attention and performing activities within a schedule"; "extreme limitations in working with others and completing a normal workday or workweek"; and "moderate limitations in social interaction." R. 27 (citing R. 337–39). He submitted another letter in January 2019 concluding that Jody's "mental conditions had crippling effects on her life," in that "[s]he had difficulty focusing and maintaining attention," was impulsive, and "had deep seeded issues relating to sexual trauma in early childhood and in the military." R. 27 (citing R. 2107).

In his decision, the ALJ discussed Goldstein's opinions and "ultimately f[ound] these opinions not persuasive." R. 26–27.  The ALJ disregarded Goldstein's opinions that Jody was unable to work and was entitled to full compensation because the issue of whether a claimant is able to work is reserved to the Commissioner.  R. 27.  The ALJ also found that the "extreme limitations" Goldstein opined that Jody had in the areas of understanding and remembering detailed instructions, concentrating and staying on task, and working with others were "not supported by the objective medical evidence, including by his own treatment notes." R. 27.  He noted that the evidence in the record showing that Jody "ha[d] been able to socialize, go on trips, care for others, do household chores, and do outdoor activities" was "inconsistent with [Goldstein's] extreme limitations." R. 27.

The ALJ found that Jody had only a moderate limitation in interacting with others, as "the record is replete with references to [Jody] vacationing, going to bars, attending festivals and doing other activities that involve interaction or potential interaction with others." R. 19, 24–25; *see* R. 1500 (noting she was planning to clean for an elderly neighbor); R. 1357 (noting she had gone to a bar); R. 1243 (noting she went on vacation with her daughter); R. 1168 (reporting she had gone out with her "drinking buddies" approximately two times that month and four times the previous month); R. 1159 (noting she was on vacation with her daughter); R. 1152 (noting she attended a Navy reunion); R. 1066 (noting she attended a wedding reception).  The ALJ also found that Jody had no more than a moderate limitation in concentrating and staying on task, as she was "able to handle her health care and act as a reliable historian for her medical issues" and could "navigate travel, drive a motorcycle, vacation and perform household activities," all of which involve the need to concentrate. R. 19–20.  He noted that, although she "could be somewhat tangential," she "was able to be redirected to be linear and goal-directed." R. 24

11

(citing R. 1235). The ALJ further cited to the report of a consulting psychologist for the state agency showing "intact memory skills," "adequate abstract reasoning skills," and "normal thought processes," R. 25 (citing R. 1743–44), and he noted that Jody had "stated that she was able to pay bills, count change, handle a savings account, and use a checkbook/money order," R. 19 (citing R. 297). He also cites to medical records in which she is shown to be alert and oriented, with her attention and concentration grossly intact. *See* R. 24–26 (citing, *e.g.*, R. 1066, 1080, 1159, 1357, 1406, 1500).

The ALJ did not err in disregarding Goldstein's conclusion that Jody was unable to work, as this is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3). Furthermore, in detailing the activities Jody had been able to do over the course of several years—involving reporting her own medical history, interstate travel, socializing with others, and chores—and explaining how this contradicted Goldstein's opinion that Jody had extreme limitations in carrying out tasks, concentrating and performing within a schedule, and working with others, the ALJ has "sufficiently articulate[d] [his] assessment of the evidence to assure [the court] that [he] considered the important evidence and . . . to enable [the court] to trace the path of [his] reasoning." *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (fifth alteration in original) (quotation marks omitted); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (noting that "[t]he ALJ is not required to discuss every piece of evidence"). He did not ignore evidence in the record that contradicted his conclusion—he pointed out that Jody reported feeling confused and having trouble focusing, R. 19–20, and he noted that she had to briefly leave the wedding because she felt overwhelmed, R. 25 (citing R. 1074); *see Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating that an ALJ "may not ignore entire lines of contrary

evidence"). Rather, he considered the evidence in the record and decided it did not support Goldstein's limitations.

Moreover, although the ALJ disagreed with Goldstein's extreme limitations, he took into account Jody's moderate limitations when formulating his RFC, which includes that Jody "is able to understand, carry out, remember and perform simple, routine and repetitive tasks but not at a production rate pace . . . but would complete all end of day goals," could only be involved in "simple, work-related decisions with the ability to adapt only to routine work place changes," and "is occasionally able to interact with supervisors; superficially with coworkers; should perform no tandem tasks with coworkers and should have superficial nontransactional contact with the general public." R. 25; *see also* R. 26 (finding persuasive an opinion by a psychologist that Jody could perform simple tasks).

Because the ALJ adequately supported his finding that Goldstein's opinions were not persuasive, the Court cannot disturb that finding, even if it would have come to a different conclusion. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Accordingly, the Court finds that the ALJ did not err in the weight he ascribed to LCSW Goldstein's opinions.

   c. **Credibility Assessment**

Jody further argues that "[t]he ALJ failed to build the requisite accurate and logical bridge to his conclusions about Jody's credibility," in particular because he "impermissibly drew negative inferences from Jody's activities of daily living" and because he found that her allegations of disability were undermined by evidence that she left her previous work for reasons other than her disability. Pl.'s Mem. Supp. Mot. Summ. J. 17–18. The Commissioner contends that "the ALJ did not equate [Jody's] activities of daily living to full time work" but, rather, "determined that [Jody's] daily activities suggested [she] was not as limited as she claimed."

13

Def.'s Mem. Supp. Mot. Summ. Affirmance 15. And while the Commissioner argues that the ALJ's characterization of the reason Jody was terminated from her previous job was reasonable, she asserts that even if this "discussion . . . was somehow in error," not every reason the ALJ lists must be valid as long as enough other reasons are valid, and "the ALJ relied on a number of valid reasons in discounting [Jody's] reports." *Id*. at 17.

In evaluating "the intensity, persistence, and limiting effects of an individual's symptoms," an ALJ will consider several factors including "[d]aily activities." Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *7 (Oct. 25, 2017)[9]; *see Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("[A]n ALJ is not forbidden from considering statements about a claimant's daily life [when evaluating whether she is disabled]. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities."). However, the ALJ must not "equate[] the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014).

The ALJ did not equate Jody's activities of daily living to full-time employment; instead, he evaluated such activities to determine whether her symptoms were as severe as she alleged. *See Jeske*, 955 F.3d at 592–93 ("Here, the ALJ did not reason that Jeske's activities of daily living are as demanding as those of full-time work. Rather, the ALJ considered Jeske's activities to determine whether her symptoms were as severe and limiting as she alleged."). For example, when addressing Jody's allegations that she "spen[t] most of her time in isolation," the ALJ

---

[9] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

noted that "the record is replete with references to [Jody] vacationing, going to bars, attending festivals and doing other activities that involve interaction or potential interaction with other[s]." R. 19.  In response to her allegations that she "lack[ed] concentration" and that "her attention span was variable," the ALJ pointed out that (in addition to that "[m]any medical records indicate[d] normal mental functioning") Jody could carry out daily tasks that required concentration and attention, such as relating her medical history and planning and taking trips. R. 19–20.  Moreover, the ALJ considered Jody's activities of daily living alongside the medical record and explained how the objective medical evidence also supported his conclusions, *see* R. 24–27; he did not use Jody's activities of daily living as the sole metric for her limitations.

Contrary to Jody's representation, *see* Pl.'s Mem. Supp. Mot. Summ. J. 17–18, the ALJ did not ignore evidence that she found some of these activities difficult.  He stated that she reported that "she had a short temper and was quick to anger" and that she was "an unreliable friend." R. 19.  He acknowledged evidence that "[h]er anxiety could surge at times," that "she avoided social situations," and that she had just a few friends. R. 25.  In addressing Jody's attendance of the wedding reception, the ALJ noted that "she stated that she had to take a break and leave for a while due to not wanting to be around a lot of people." R. 25.  Although he did not address the circumstances of Jody's Navy reunion, *see* Pl.'s Mem. Supp. Mot. Summ. J. 17–18 (pointing to evidence that while at the reunion, "she spent much of her time alone, panicking"), the ALJ need not address every piece of evidence, *Villano*, 556 F.3d at 562, as long as he did not ignore an entire line of evidence that would cut against his conclusion, *Arnett*, 676 F.3d at 592.  Here, the ALJ discussed other instances in which she felt overwhelmed by being around people, such as the wedding, and thus his omission of the details of the Navy reunion does not necessitate remand.

The Court agrees with Judge Hawley that the ALJ's finding that Jody's "allegations of disability [we]re undermined by evidence indicating that she stopped working due to reasons other than her disability" is not adequately supported by the record. *See* R. 25–26; *see also* R&R 16. The ALJ states that Jody was fired from her job, R. 25, but it appears from the record that Jody was on medical leave from work beginning in 2012 and was terminated in 2014 when she failed to submit her medical paperwork on time. *See* R. 1019, 1901 (containing a notation from Jody that at the time she was terminated, she had not been successfully rehabilitated and could not have gone back to work). As such, the circumstances of Jody's termination had at least some connection to her disability. However, the ALJ otherwise adequately supported his determination that Jody's subjective symptoms were inconsistent with the record as a whole. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are."). Thus, the Court finds that the ALJ did not err in assessing Jody's subjective evidence.

### d. Listing 12.15

Finally, Jody argues that the ALJ erred by finding that her PTSD did not meet or equal Listing 12.15 at step three. Pl.'s Mem. Supp. Mot. Summ. J. 14–17. To meet Listing 12.15 ("Trauma- and stressor-related disorders"), a claimant must provide (A) medical documentation of a trauma- or stressor-related disorder and evidence of either (B) an extreme limitation in one or a marked limitation in two of four specified areas of mental functioning or (C) a serious and persistent medical disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.15. The areas specified in paragraph (B) are: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. *Id*. An extreme limitation indicates that a claimant "[is] not able to function in this area independently,

16

appropriately, effectively, and on a sustained basis"; a marked limitation indicates that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. § 12.00F(2)(d), (e).

The ALJ found that Jody did not satisfy paragraph (B) because she had only a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. R. 19–20. He further determined that the evidence did not show that paragraph (C) was met. R. 20. Jody argues that she has met the paragraph (B) criteria because she has an extreme limitation in concentrating, persisting, or maintaining pace. Pl.'s Mem. Supp. Mot. Summ. J. 16.[10] She contends that, had the ALJ assigned the proper weight to LCSW Goldstein's opinion, the ALJ would have correctly found that the Listing 12.15 criteria were satisfied. *Id*. at 16–17. However, the Court has found that the ALJ did not err in concluding that the extreme limitations propounded by Goldstein were not supported by the record. *See supra* Section II(b).

Jody also argues that the record as a whole supports an extreme limitation in concentrating, persisting, and maintaining pace, based on medical evidence that her thought processes were tangential, she tended to ramble, and she needed redirection. Pl.'s Mem. Supp. Mot. Summ. J. 16. She emphasizes that the evidence indicating that she could be redirected when she became tangential shows that she could not function in this area *independently*, which fits the definition of an extreme limitation. Pl.'s Reply 4–5, ECF No. 19. The ALJ explicitly addressed the evidence that Jody could be redirected later in the opinion and thus was aware that the redirection was by medical providers. *See* R. 24 (citing R. 1235); *see Rice v. Barnhart*, 384

---

[10] Jody does not contest the ALJ's findings as to the paragraph (C) criteria. *See* Pl.'s Mem. Supp. Mot. Summ. J. 14–17.

F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, [courts] consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five."). But in light of the other record evidence, and as discussed earlier in this Order, the ALJ nonetheless found that Jody only had a moderate limitation in concentrating, persisting, and maintaining pace. *See* R. 19–20 (noting that "[m]any medical records indicate normal mental functioning" and that Jody was "able to handle her health care and act as a reliable historian for her medical issues" and "navigate travel, drive a motorcycle, vacation and perform household activities").

Jody essentially asks the Court to ascribe greater weight to the evidence that she was tangential and needed redirection from another person, but this is outside of the Court's purview. *See Elder*, 529 F.3d at 413 ("[The court is] not allowed to displace the ALJ's judgment by reconsidering facts or evidence."). The Court finds that the ALJ adequately supported his determination that Jody's limitation in concentrating, persisting, and maintaining pace was moderate and thus that he did not err in finding Jody did not satisfy paragraph (B) of Listing 12.15. As category (B) is not satisfied, the Court need not address whether category (A) is satisfied.

## CONCLUSION

For the foregoing reasons, Plaintiff Jody L. K.'s objection, ECF No. 21, is OVERRULED, and Magistrate Judge Jonathan E. Hawley's report and recommendation, ECF No. 20, is ADOPTED. Plaintiff's motion for summary judgment, ECF No. 15, is DENIED, and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's motion for summary

affirmance, ECF No. 18, is GRANTED.  The Clerk is directed to enter judgment and close the case.

    Entered this 24th day of March, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
